**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CASE NO. 2:94-CR-000001-JRG-RSP-3 |
| JERMON RODRIGUEZ CLARK | § § § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Jermon Rodriguez Clark's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). (Dkt. No. 206.) The Court, having considered the Motion, the response, the reply, the record, and the applicable law, finds that the Motion should be and hereby is **DENIED**.

**I. BACKGROUND**

After entering a guilty plea on July 28, 1995, Clark was sentenced to 540 months' imprisonment for the offense of carjacking that resulted in death in violation of 18 U.S.C. § 2119, and 60 months' imprisonment for the offense of possession of a firearm during a crime of violence in violation of 18 U.SC. § 924(c)(1). (Dkt. No. 128.) Both sentences were ordered to run consecutively, totaling 50 years' imprisonment. Clark did not file a direct appeal. He filed two 28 U.S.C. § 2255 motions, both of which were dismissed. (Dkt. Nos. 159, 189.) The United States Court of Appeals for the Fifth Circuit affirmed both dismissals. (Dkt. No. 124, at 3.) Clark filed this Motion on December 16, 2022.

## II. FACTUAL BACKGROUND

Clark, Kendrick Allen, and Torvos Simpson (collectively, the "defendants") formed a plan to carjack a vehicle. (Dkt. No. 124, at 4.) At the time, Clark was fifteen years old; Allen was seventeen and Simpson was sixteen. (*Id.*, at 3.) Clark stole a .22 caliber rifle from his father to use for the carjacking. (*Id.*, at 4.) The defendants decided one of them would pull a person out of their car while the others would get inside. (*Id.*, at 5.)

On November 25, 1993, after being unable to find a suitable victim for two hours, the defendants walked to a Whataburger restaurant, where Clark had hidden the rifle. (*Id.*) The defendants sat at a table inside the restaurant and spoke to the victim, sixteen-year-old Susan Van Orden ("Van Orden"), an employee of the Whataburger. (*Id.*) Allen persuaded the victim to give them a ride. (*Id.*) The three discussed killing her, but it is unclear who mentioned this first. (*Id.*)

Shortly after 10:00 p.m., Van Orden drove the defendants a short distance at which time a gun was pulled from the rear floorboard and pointed at her. (*Id.*) She moved to the front passenger seat and Clark began driving the car. (*Id.*, at 6.) Van Orden begged them not to kill her, asking them to leave her alone and simply take the car. (*Id.*) Clark drove them down a deserted road in Marshall, at which point Van Orden was forced out of the car. (*Id.*) She was then shot and beaten by Allen and Simpson. (*Id.*) One or both of them dragged her body to an area of tall grass. (*Id.*) Once they returned to the car, Clark drove them away, and they later threw the rifle into a ditch. (*Id.*) Clark eventually lost control of the vehicle during a high-speed chase with police. (*Id.*, at 7.)

In 1995, after the Court certified Clark to be tried as an adult, all three were indicted. (*Id.*, at 3.) Clark was sentenced to 540 months' imprisonment for the carjacking and 60 months' imprisonment for possession of a firearm during a crime of violence. (Dkt. No. 128.) Allen and Simpson were sentenced to life in prison.

**III. CLARK'S MOTION**

Clark maintains that extraordinary and compelling reasons exist in his case which warrant compassionate release. Specifically, Clark cites his age at the time of the offenses and argues that since his conviction in 1995, courts and scholars have recognized that the juvenile brain is different from that of an adult. (Dkt. No. 206, at 17.) He insists that juveniles are vulnerable, lack maturity, and are susceptible to negative influences and pressures. (*Id.*) Clark states that the United States Supreme Court has held that it would be morally "misguided to equate the failings of a minor with those of an adult," as a greater possibility exists that a minor's character will be reformed. (*Id.*, at 18, citing *Roper v. Simmons*, 543 U.S. 551, 570 (2005)). Further, Clark argues that he deserves a second chance because he has served more than half of his sentence. (*Id.*, at 22.)

Moreover, Clark maintains that if he were sentenced for the same offenses today, he would have a different criminal history category and would be subject to a lower sentence range of 324-405 months' imprisonment rather than 360 months to life. (*Id.*). He states that a court may modify a sentence to a term of imprisonment based on a range that was subsequently lowered by the United States Sentencing Commission. (*Id.*) Since he was previously convicted of two juvenile offenses, four additional points were added in determining his sentence—but those points would not be considered or added under the same circumstances today. (*Id.*, at 22–23.) Clark argues that his criminal history would be categorized as II rather than III, and that because he has already served 347 months, he "is within the range of punishment should he have been sentenced today under the current guidelines." (*Id.*, at 25.)

Clark further contends that he has demonstrated "extraordinary post-sentencing rehabilitation." (*Id.*) Specifically, he highlights his receipt of a GED, numerous college credits, accolades, and awards while imprisoned. (*Id.*) He also assists other prisoners through programs

like the Suicide Watch Program and notes that his prison disciplinary records demonstrate progress over time. (*Id.*) He has a post-release plan and expresses a desire to be released to a halfway house to assist him with transitioning back into society. (*Id.*, at 26.) Finally, Clark argues that he is not a threat to the public, his risk assessment has been deemed "low," and the time he has spent in prison illustrates the seriousness of his crimes, respect for the law, and just punishment. (*Id.*, at 27.)

### IV. THE GOVERNMENT'S RESPONSE

The Government contends that a change in the sentencing guidelines does not constitute an "extraordinary and compelling" reason warranting compassionate release because the change cited is not retroactive. (Dkt. No. 207, at 3.) It further maintains that Clark's rehabilitation, standing alone, is legally insufficient to serve as an extraordinary and compelling reason for compassionate release. (*Id.*, at 5–6.) Additionally, the Government asserts that Clark has provided no reason for the Court to reduce his sentence because he is not entitled to a reduction under the factors set forth in 18 U.S.C. § 3553(a). (*Id.*, at 6.) Finally, the Government contends that Clark failed to demonstrate how his release would reflect the seriousness of the crimes, promote respect for the law, and provide just punishment. (*Id.*, at 6–7.) Given the offenses of conviction, the Government maintains that compassionate release is inappropriate. (*Id.*, at 7.)

### V. CLARK'S REPLY

Clark responds that the Government ignored a large portion of his motion: his young age at the time of the offense. (Dkt. No. 208, at 1.) He contends that the Government ignored the number of recommendations from individuals attesting to his behavior and rehabilitation. (*Id.*, at 4.) Clark further maintains that the Fifth Circuit has held that a district court is bound only by § 3582(c)(A)(1) and the factors outlined in § 3553(a), thereby allowing this Court to consider the

sentencing guidelines and what his sentence would be if sentenced today. (*Id.*, at 9.) Clark provides the following in support of his motion for compassionate release:

- he had just turned 15 when the crime was committed
- he had no serious criminal history
- he has served over 50% of his 600-month sentence
- he has demonstrated his rehabilitation through his education, good work (including time on the suicide watch program and other such endeavors), good behavior, and numerous references, etc.
- he did not take part in the actual murder of Ms. Van Orden
- if sentenced today, he would have a different criminal history and be subject to a lesser range of punishment (most likely 324-405 months instead of 360 months to life)
- he has a plan for his release (including a request to be released to a halfway house)
- his recidivism risk assessment is low in both general and violent levels.

(*Id.*, at 10.)

**VI. STANDARD OF REVIEW**

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)—the statute authorizing compassionate release.

The First Step Act of 2018 instituted the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194. The Act, in part, amended section 3582(c), which gives the court discretion—in certain circumstances—to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Even if extraordinary and compelling reasons exist, such reasons must outweigh the 18 U.S.C. § 3553(a) factors to warrant a sentence reduction. *See* 18 U.S.C. 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .
>
> (5) any pertinent [Sentencing Commission] policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*Id*. § 3553(a).

**VII. DISCUSSION AND ANALYSIS**

While Clark exhausted his required administrative remedies prior to filing the Motion, the Court concludes that he is not entitled to compassionate release at this time. Ultimately, he failed to satisfy his burden of demonstrating the necessary circumstances that would warrant compassionate release. With respect to the § 3353(a) factors, the Court specifically finds that reducing Clark's sentence or releasing Clark would neither promote respect for the law nor provide just punishment for his serious offense.

A. Exhaustion of Administrative Remedies

The pleadings indicate that Clark exhausted his administrative remedies before filing this Motion. The record reflects that on October 4, 2022, Clark submitted a request for compassionate release to the Warden at Federal Correctional Institute Beaumont. (Dkt. No. 207, at 2.) He sought release based on his rehabilitation and his argument that his sentence would be lower if he were sentenced today. (*Id.*) The Warden denied the request, stating that the circumstances presented as "extraordinary and compelling" did not meet the qualifications for a reduction in sentence. (*Id.*) Accordingly, as the Government notes, Clark satisfied the exhaustion requirement.

B. Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must satisfy three criteria for release. *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of the two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(C)(1)(A)(i), or the defendant is at least 70 years of age, has served at least thirty years in

7

prison, and meets the additional requirements under § 3582(c)(1)(A)(ii). *Shkambi*, 993 F.3d at 392. Second, the defendant must show that compassionate release would be consistent with applicable policy statements. Third and finally, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors." *Id*. A district court has discretion to deny compassionate release if the § 3553(a) factors counsel against reduction. *Jackson*, 27 F.4th at 1089 (citing *Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021)).

Section 3582(c)(1)(A)(i) does not define what constitutes "extraordinary and compelling reasons" which would merit compassionate release. Congress, instead, delegated its authority to the U.S. Sentencing Commission. *See* 28 U.S.C.§ 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). Before the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling. While not binding, the Commission's policy statement in § 1B.1.13 together with its commentary provide guidance concerning what may constitute "extraordinary and compelling" reasons warranting compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B.1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S.Ct. 2688 (2021).

In Application Note 1 of § 1B1.13, the Commission defined "extraordinary and compelling reasons" to include four categories of circumstances, any one of which could suffice to warrant compassionate release: (1) certain medical conditions of the defendant; (2) the defendant is sixty-five years or older and meets other requirements; (3) the defendant's family has specified needs

8

for a caregiver; and (4) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B.1.13 cmt. n.1.

### 1. United States Sentencing Guidelines

Clark maintains that his sentence would be lower if he were sentenced today. Specifically, he states that if he had been sentenced today, his criminal history category would be lower and he would be subject to a sentence range of 324 to 405 months' imprisonment rather than 360 months to life. (Dkt. No. 206, at 22.) Clark's prior criminal history consisted of two juvenile offenses: possession of a controlled substance and indecent exposure. (*Id.*, at 22–23.) Clark relies on this criminal history to argue that current section 4A1.2(c)(1) of the Sentencing Guidelines would not contemplate his misdemeanor conviction for indecent exposure because he was not sentenced to more than one year. (*Id.*, at 24.) He notes that he was never confined for indecent exposure and thus was never released. Under the current version of section 4A1.2(d)(2)(A), therefore, a point could be reduced. (*Id.*) Taking into account the current versions of the sentencing guidelines for his indecent exposure offense, Clark argues he would receive a total criminal history category of II rather than III. (*Id.*, at 24–25.)

Clark requests that this Court consider intervening changes in the sentencing guidelines/laws when examining whether "extraordinary and compelling" circumstances exist warranting compassionate release. The Government responds that these changes are nonretroactive, and thus do not constitute "extraordinary and compelling" reasons justifying compassionate release.

To the Government's point, while the Fifth Circuit has yet to directly comment on nonretroactive changes in sentencing provisions applicable to motions for compassionate release, other circuits have addressed the issue. The D.C., Third, Seventh, and Eighth Circuits have recently

9

held that such nonretroactive changes do not constitute "extraordinary and compelling" reasons. *See, e.g.*, *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022) ("To begin, there is nothing remotely extraordinary about statutes applying only prospectively. In fact, there is a strong presumption against statutory retroactivity, which is deeply rooted in our jurisprudence and embodies a legal doctrine older than our Republic.") (internal quotations and citations omitted); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) ("Congress from time to time prospectively increases or decreases existing criminal penalties, so that circumstance may not be 'extraordinary' as an empirical matter."); *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) ("Put another way, there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute."); *United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2022) ("The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance."). These Courts are concerned with issues regarding the separation of powers, the imposition of a lawfully imposed sentence, and statutory construction.

Conversely, the First, Fourth, Ninth, and Tenth Circuits have determined just the opposite—intervening, nonretroactive changes can support compassionate release. *See, e.g.*, *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *United States v. Ruvalcaba*, 26 F.4th 14, 25 (1st Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021). These circuits have determined that intervening, nonretroactive changes can—in combination with other factors and on an individualized basis—be considered an "extraordinary and compelling" circumstance.

This Court, however, is bound by Fifth Circuit precedent. The Fifth Circuit made clear that the district court is bound *only* by section 3582(c)(1)(A)(i) and the sentencing factors outlined in

section 3553(a). *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021) (emphasis added). Moreover, recent Fifth Circuit guidance suggests that it is within the discretion of the district court to determine whether nonretroactive sentencing changes may constitute extraordinary and compelling reasons for sentence reduction. *See United States v. Cooper*, 996 F.3d 283, 289 (5th Cir. 2021) ("We leave for the district court to consider, in the first instance, whether the nonretroactive sentencing changes...constitute extraordinary and compelling reasons for a reduction in sentence.").

Given that the Fifth Circuit has not weighed in on the circuit split, but has instead indicated that such intervening, nonretroactive changes in sentencing guidelines is a matter within the discretion of the district court, this Court sees no need to consider the split between other circuits on this issue. *See, e.g.*, *United States v. Hubert*, 574 F.Supp.3d 416, 423 (E.D. Tex. 2021) ("Because the Fifth Circuit has clearly laid out the discretion afforded to district courts under § 3582(c)(1)(A), this Court need not venture into an analysis of the belabored circuit split as to whether sentencing changes to § 924(c) may be considered as an extraordinary and compelling reason under § 3582(c)(1)(A).").

In this particular case, even taking as true Clark's assertion that he would have received a lower sentence if sentenced today, the Court remains persuaded that the controlling § 3553(a) factors weigh against compassionate release at this time, and any subsequent nonretroactive reduction in sentencing guidelines does not, in and of itself, constitute a compelling or extraordinary basis to grant a sentence reduction.

### 2. Rehabilitation, Accomplishments, and Good Behavior

The record illustrates Clark's rehabilitation and accomplishments during his time in prison. Specifically, the Court recognizes that Clark received his GED and an Associate in Arts degree

from Allan Hancock College in 2011. (Dkt. No. 206, at 5.) Also in 2011, Clark received a Certificate of Achievement from Coastline Community College for General Business. (*Id*.) Further, Clark received a Certificate of Completion for his service as a "Suicide Watch Inmate Companion," from the Chief Psychologist at Federal Correctional Complex at Lompac. (*Id*.) Clark also won a writing contest for a short essay and volunteered as a GED and college tutor. (*Id*.) An official within the BOP summarized his progress as follows: "Good; inmate has continually participated in the recommended academic programs. He completed his GED and has strived to enhance his education beyond incarceration." (Dkt. No. 206, at 28.) Clark's continued education and successful completion of multiple programs are clearly positive.

The Government attached Clark's disciplinary record to its response. (Dkt. No. 207, at 17.) The record shows that Clark was disciplined three times—for (1) possession of drugs/alcohol in 2009, (2) fighting with another inmate in 2009, and (3) possession of a hazardous tool, a cellphone, in 2019. (*Id*.) While not spotless, Clark's record shows that his overall behavior over twenty-eight years has been generally favorable. He has had only one disciplinary infraction in the past thirteen years.

However, the Court finds that Clark's rehabilitation and good behavior alone are not "extraordinary and compelling" circumstances warranting compassionate release. *See, e.g., Shkambi*, 993 F.3d at 392 (explaining that Congress instituted just one restriction on what should be considered extraordinary and compelling reasons: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *United States v. Boyd*, 2021 WL 5094903, at *4 (E.D. Tenn. 2021) (the court, while recognizing the prisoner's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary to outweigh the other sentencing factors).

*3. Section 3553(a) Factors*

Ultimately, compassionate release is not warranted in this case in light of the applicable factors articulated in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (unpublished) (finding that the district court did not abuse its discretion in denying compassionate release after balancing the section 3553(a) factors).

Clark seeks compassionate release because of his youth at the time of the offenses, as he was merely fifteen at the time. He is currently forty-four years old—and has served over twenty-eight years in prison, just over half of his fifty-year sentence. Clark also seeks relief based upon his extraordinary rehabilitation efforts, accomplishments, and good behavior while imprisoned. He supplied various letters of support from individuals throughout the community. Clark's own letter to the Court is also included in the record. Finally, Clark asserts that he is not a danger to the community because the BOP classifies his risk of recidivism as low.

The Government opposes compassionate release based on these arguments. It argues that rehabilitation alone cannot by law serve as an "extraordinary and compelling" circumstance. The Government further contends that Clark failed to illustrate how his release would reflect the seriousness of his offenses, promote respect for the law, and provide just punishment. In short, the Government urges this Court to deny the Motion because "release at this point is inappropriate based on the offense of conviction." (Dkt. No. 207, at 7.)

a. Youth Status at the Time of the Offense

Clark argues at length that his youthful status at the time of the offense constitutes an "extraordinary and/or compelling" reason warranting compassionate release. Specifically, he maintains that an increasing number of federal courts, experts, and legislators have advocated for

13

"a second look" approach to defendants who were sentenced as juveniles. (*Id*., at 17.) Clark highlights the several Supreme Court cases indicating that developmental differences exist between juveniles and adults—particularly through a juvenile's lack of maturity, underdeveloped sense of responsibility, vulnerability, lack of control, and changeability. *See, e.g.*, *Roper*, 543 U.S. at 569-70 (2005) (holding that the imposition of the death penalty on offenders who were under the age of eighteen at the time of their offenses is unconstitutional); *Graham v. Florida*, 560 U.S. 48, 62-63 (2010) (holding that a sentence of life imprisonment—without the possibility of parole—on a juvenile offender is unconstitutional under the Eighth Amendment); *Miller v. Alabama*, 567 U.S. 460, 470 (2012) (holding that mandatory life-without-parole sentences for juveniles violates the Eighth Amendment). The Government does not address this argument.

Juveniles are different from adults. As the Supreme Court has noted, juveniles often lack impulse control and are more easily influenced by peer pressure. A juvenile's brain is not fully developed. It is well-settled that, in comparison to an adult offender, a juvenile is more vulnerable, more impetuous, and often fails to consider or truly understand the long-term consequences of his actions. *Miller*, 567 U.S. at 471 (remarking that juveniles have diminished capacity, greater prospects for reform, and are more vulnerable); *Graham*, 560 U.S. at 68 (explaining that parts the brain involved in behavior control are fundamentally different for juveniles than adults).

Clark's youth at the time of his offenses, however, was taken into account during sentencing. The sentencing trial judge explained that even though Clark was "very young" on the night of the offense, the "actions that took place that night were not the actions of youthful individuals, but brutal individuals." (Dkt. No. 145, at 20.) He stated that the decision in his case was "even more difficult" due to Clark's age, but that he obviously knew the difference between right at wrong at the time of the offense. (*Id*., at 22.) The sentencing court stressed that Clark would

not be an "old man" when released after serving his sentence. (*Id*., at 24.) While Clark's codefendants received life in prison, Clark received a total sentence of 50-years' imprisonment, even though the Government sought a life sentence for Clark as well.

An innocent sixteen-year-old lost her life because of the intentional acts of Clark and his codefendants. This is a fact that weighs heavily in this case. The record reflects that although Clark did not participate in the actual physical shooting and beating of the victim, he participated in planning the offense, procured the rifle that shot the victim, and was the driver of the vehicle. The sentencing court carefully considered Clark's youth during sentencing and did not sentence him to life. The Court, viewing this record in hindsight, finds it difficult to ascribe Clark's actions as merely impulsive or impetuous. In this case, therefore, the Court does not find Clark's youth or juvenile status at the time of this offense constitutes a circumstance warranting compassionate release at this time.

### b. Seriousness of the Offense, Respect for the Law, and Just Punishment

Clark concedes that the crime he participated in was extremely serious, but maintains that he was inside the vehicle "when the actual murder was committed and was not present when his codefendants killed" the victim. (*Id.*, at 27.) He further argues that he has served almost 29 years in prison, which reflects the seriousness of crime, respect for the law, and has provided just punishment. He contends that because he is not a threat, there is no need to protect the public from him. The Government responds that a consideration of these three factors indicate that compassionate release would be inappropriate under these facts.

A district court may place greater weight on the seriousness of a defendant's offense when weighing the factors under section 3582(c)(1)(A)(i). *See United States v. Martinez*, 832 F. App'x 906 (Mem) (5th Cir. 2021); *United States v. Wynn*, 2022 WL 3214440, at *3 (N.D. Tex. Aug.

15

2022) ("Reducing Defendant's sentence will not adequately reflect the seriousness of his offenses, promote respect for the law, provide just punishment for the offenses, adequately deter criminal conduct, or protect the public from further crimes.") (citing *Martinez*, 832 F. App'x 906).

Here, the seriousness of Clark's offenses weighs heavily against compassionate release. In other words, reducing his sentence or releasing Clark from imprisonment at this time will not adequately reflect the seriousness of his offenses, promote respect for the law, and provide just punishment. As explained above, Clark and his two codefendants formed a plan to steal a vehicle; Clark stole a rifle, which was used to murder the victim, from his father; and the three of them discussed the necessity of killing someone in advance of stealing the vehicle. Clark drove the stolen vehicle to a dead-end road, at which point the victim was forced out of the car, shot, and then beaten extensively. She was left and then died.

While Clark was inside the vehicle at the time of this brutal attack, the Court notes that (1) the rifle, which Clark first stole and then purposely brought to the Whataburger, was used to murder the victim; (2) at no point, neither during the planning at the restaurant nor while traveling to the dead-end road, did Clark reconsider his participation in the scheme; and (3) unlike his codefendants, Clark did not receive a life sentence. The underlying record in this case reveals that Clark and his codefendants specifically planned to steal a vehicle and kill a victim in order to travel to California. The circumstances of the offense and Clark's participation show that the offense was especially brutal. Reducing Clark's 50-year sentence—or releasing him at this time after serving something over half of his sentence—would neither reflect the seriousness of this offense nor promote respect for the law. The Court has some concern that such a result, under these particularly gruesome facts, might have the opposite effect.

While eligible for a life sentence, Clark instead received a 50-year sentence. The Court does not find that Clark's 50-year sentence is disparate compared with the sentences of other offenders—including juveniles—convicted of carjacking resulting in death. *See, e.g.*, *United States v. Walton*, 537 F. App'x 430, 432 (5th Cir. 2013) (affirming sentence of 480 months' imprisonment, or 40 years, for a juvenile); *United States v. Carrion-Cruz*, 92 F.3d 5, 6 (1st Cir. 1996) (affirming upward departure and life sentence for a youthful offender with limited intellect convicted of carjacking resulting in deaths); *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996) (affirming sentence of 525 months imprisonment, or 43.75 years). Given Clark's sentence of 50 years' imprisonment for carjacking resulting in death, the Court determines that his sentence does not reflect unwarranted sentence disparities.

The Court has the discretion to place appropriate, albeit heavy, weight on a Defendant's offense when evaluating the § 3553(a) factors. *See Martinez*, 832 F. App'x 906 ("It was not unreasonable for the court to place greater weight on the seriousness of Martinez's offense, including the fact that a dangerous weapon was involved in criminal activity, of which he was considered a leader."); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (affirming denial of compassionate release wherein the district court considered the Defendant's "severe" conduct and his serious drug crime.); *United States v. Tamayo*, 2022 WL 1096580, at *6 (N.D. Tex. Mar. 14, 2022) ("Tamayo's conduct was grave at the time it occurred on February 16, 2006, and it remains equally serious today. The serious nature of the offense and surrounding conduct weighs heavily against release.").

While Clark will surely disagree with these results, such amounts, in the final analysis, to a disagreement with the Court's balancing of § 3553(a) factors. *See United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. Apr. 30, 2021) ("Though Keys claims that the district court gave too

17

much weight to his criminal history, his argument amounts to a mere disagreement with the court's balancing of the § 3553(a) factors."). The law imposes this difficult and burdensome balancing on the Court and not the moving inmate.

## VIII. CONCLUSION

As noted above, Clark failed to satisfy his burden of demonstrating the necessary circumstances to warrant compassionate release or any reduction in his sentence, under these facts and at this time. He has not demonstrated that extraordinary and compelling reasons exist warranting compassionate release. Clark's youth (his primary argument) was already considered at sentencing, and rehabilitation alone does not suffice as the requisite "extraordinary and compelling reason" for compassionate release. Even assuming that Clark would receive a different sentence today, such does not persuade the Court given all the other factors and circumstances outlined above. Clark cannot alternate in time between then and now, simply because it helps him seek early release.

Furthermore, in applying the § 3553(a) factors, the Court has determined that the seriousness of Clark's offense and his conduct weigh heavily against compassionate release. While he has served just over half of his sentence and has been deemed "low risk" for recidivism, reducing his sentence or releasing Clark at this time would undermine respect for the rule of law, fail to reflect the seriousness of his offense, and fail to provide just punishment. Consistent with the foregoing analysis, Clark's motion for compassionate release (Dkt. No. 206) is **DENIED**.

**So ORDERED and SIGNED this 6th day of April, 2023.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE